May it please the court, my name is Ronald Dean. I'm the attorney for Plaintiff Appellant John Leicht. First, an admission that my reply brief failed to address the Clark v. Washington Teamsters case that was raised in the answering brief at page 25 and 26. I'd like to take a minute to do that now. There the plan said, or the collective bargaining said, that the employer has to contribute health plan contributions for any bargaining unit member who works 80 hours or more in the preceding month. Mr. Clark was the corporate owner and he was a bargaining unit work, but now he was doing corporate owner work and he contributed to the health plan and he said I get health coverage because I followed exactly what it said. I was compensated for 80 hours or more. The majority and a two-to-one decision said there is an implied term here. It means 80 hours or more of bargaining unit work. It doesn't mean of any work and the we are willing to imply this necessary term that just seems reasonable. The court probably unnecessarily distinguished Blau. Blau said that it is an abuse of discretion to impose a standard not contained in the terms of the plan and it said Blau only applies when there's a To that extent, Clark is an outlier because both Brown and Saffold cited in both our briefs say that Blau doesn't apply just in flagrant violations, but you just can't impose a standard. So Judge Boutiver in dissent said, look, we've got to follow the rule. The two-member majority said it's okay to imply a necessary term. So how does that apply here? First, the court said we're not drawing a distinction out of the air. This is necessarily implied. We believe what the defendant plan is trying to do here is draw a distinction out of the air. We made the point perhaps one too many times that they could distinguish between, if they can distinguish between privately employed and publicly employed building inspectors, they can distinguish between those who make more than $50,000, the median, and less than $50,000. It has no connection with the purposes of the plan. It has no connection. Let me ask you a question talking about the connection with the purposes of the plan. Carpenters can organize privately employed building inspectors, true? Yes. And they can also organize publicly employed. There's no difference between the two. And who can be organized, right? In fact, in some cities, the publicly employed building inspectors are organized, not by the carpenters, some other union, but they are definitely union members. So what is the purpose of distinguishing between privately employed and publicly employed? I have no idea. Has the union forwarded any reason for that? The only reason in their brief is that, that I've been able to determine, is that if they cover privately employed building inspectors, they'd have to cover twice as many building inspectors. There are two, we answered that in two ways. First, that there in their entire experience, there have only been six instances out of 66,000 members in the 20 years, almost 30 years now of the rule. So that would double it from six to 12. That's not significant. And second, there's only so much government building inspector work to be done. If you take some of the government building inspectors and you move them over to the private sector, you haven't expanded the amount of building inspection work. So you haven't expanded the exception. I've got another question. Here the plan vests the trustees with certain rights and obligations and powers, right? Yes. The trustees, one of those powers is to delegate their powers under the plan, and they delegate the power, the powers to the subcommittee. The subcommittee, before Mr. Light retires, determines that the coverage should only be as to publicly employed building inspectors. Why is that a perfectly permissible amendment of the overall plan? The issue of notice to Light is not one of our points. Theoretically, he knew. Whether he actually knew or not doesn't matter as a legal matter. He clearly didn't rely on it whether he knew or not because he went ahead and did the job anyway, right? He did. But the question is, what did he do in his previous 20 years of bargaining? Maybe I haven't made myself clear. Why doesn't the duly instituted delegee of the trustees, that is the subcommittee, have the power to make the determination that it did? Because the interpretation is really a limitation and it narrows the category. And ERISA specifically says that you cannot amend the plan to reduce accrued benefits, and the Supreme Court has held in the Hines case that something very similar to this was the reduction of an accrued benefit. Mr. Light, if the plan says, for instance, all building inspectors are entitled to the exception, then the interpretation saying only some building inspectors are entitled to it is a reduction of the accrued benefit. But the key word there is accrued benefit. This determination by the building subcommittee was determined before Mr. Light retired. Why do you say that his benefit was then accrued? Oh, in the Hines case, a similar argument was made, and the Supreme Court rejected it. There are some circuit court cases thereafter and district court cases that say you have accrued what you are entitled to in the future. The accrual happened while he was working. It's all the conditions of his employment. It's not just he accrued $10 a month for each year of service. So that's accrued. It's also the conditions surrounding it, such as his retirement. So is it your position that if the committee had acted one day after Mr. Light had started working there, he would still have the accrued benefit? It couldn't be narrowed? The law says he has the benefit for one day. Say he works 10,000 days, he has one ten-thousandth of that credit. They can change it as to future earned credits, but they can't change it as to past. So if he had worked half, say he worked 20 years, if he worked 10 years... So do I understand you to be admitting or conceding that the subcommittee had the statutory and contractual power to make the determination that only public employee building inspectors were covered by the plan in the future? As to future earned benefits. So if I'm a carpenter and I've earned 10 years and they change it and I work another 10 years, they can change it, they can cut off half my benefit, but not all of my benefit. Hines and subsequent cases make that clear. But if they can do that, then why does that not mean that the term is ambiguous enough that they have the power to give this interpretation? No, no. I'm saying that their interpretation is really an amendment because it changes the category of people and an amendment can apply in the future, but not the past. Can I ask you a different question? Why are you concerned about making this a class action for purposes of your injunctive relief? It seems to me that if what you're trying to do is get them to change the SPD, he can do that with injunctive relief as an individual. I don't understand this whole class action situation. Tiger by the tail. I grab the tiger's tail and I can't find a way to let go. So you don't actually care if, I mean, really this is an individual claim and you don't, I mean, can we ignore all the class action issues? In their answering brief, they said, if Mr. Light wins, we will do all these things. I was happy. That made me very happy and the class situation is not important to me, assuming they do that. Counsel, I want to go back to the committee. It's your contention that the committee didn't amend the plan documents. You dropped a footnote in your brief that cited Cigna versus Amara. Right. It's two steps. If the plan is ambiguous, their interpretation is reasonable they didn't amend the plan. If the plan is unambiguous, they can amend the plan, but only as to future accrued benefits. But they didn't amend the plan in this instance, did they? Well, I contend they did because I contend that their interpretation was unreasonable and therefore the interpretation constitutes an amendment. But the SPD, the summary plan document, or whatever that stands for, doesn't amend the plan. The Supreme Court said that, doesn't amend a plan. They also amended the plan at the same time. The plan document was republished with this restriction at the same time as the summary plan description. In January of 2009. I believe that's correct, or soon thereafter, retroactive to January 2009, but in response to the other point, before Mr. Light went back to work. But after he retired. After he retired, yes. He retired in August of 2008. That's correct. All right. I'll reserve my time. Thank you. Good morning. May it please the Court? Desmond Lee, representing the Southwest Carpenters Pension Trust. This matter involves the issue of the building inspector exemption to the plan's benefit suspension provisions, in particular its early retirement provisions. The issue arose in June 2008 when the committee, as Judge Bee had noted, decided to clarify this term. This interpretation is governed by an abusive discretion standard. This is very important because the reason why the judge below decided to rule in our interpretation is reasonable. The way you can take a look at this case is in at least two ways. First of all, that there's an ambiguity in the term. And that ambiguity is there because, as Tapley and other cases have set forth, that this term is not defined by the plan. And if it's not defined by the plan, it can therefore be later clarified by the plan as the plan did so. Just because a clause covers A and B doesn't mean it's ambiguous. It means it covers two persons. Why is it ambiguous? Building inspector is not an ambiguous term? It is because it's a technical term. And it's understood to mean, as we've cited in various dictionaries and other sources, to show that this is, in fact, a term that's understood to apply only to public sector inspectors. And if you take a look even at Mr. Like's own definition under the ONET, which was the successor to the Dictionary of Occupational Classes, you can see that it consists of two sets of inspectors, a public sector inspector and a private sector inspector. They could also apply to public inspectors, pardon me, building inspectors who were blonde and those who were brunette. They could also apply to building inspectors who were women and building inspectors who were men. And as a matter of fact, what the judge here did, the district court judge said, it applies to both. And therefore, it was reasonable for them to, reasonable for the trustees to limit it to one. That came out of the clear blue. Why is it reasonable? Why it's reasonable is because if you do have two choices and. But you don't have two choices. You cover two people, women and men. Why is it reasonable for the trustees to say only women or only men? Because they have, in certain situations, they can distinguish between one or the other. Why can they distinguish? Because it sounds to me like it's a sexist determination. Well, this doesn't involve sexism, your honor. Of course. That's actually a helpful example. If the plan said judge and then they decide that means only women judges, how would that make any sense? How would that make judge ambiguous? Well, because judge is not normally taken to mean a public sector building inspector. And I keep turning back. But so you're saying that normally building inspector means public building inspector. That's correct. And if you take a look. So what's the evidence that normally that's what it means? Because you take a look at, for instance, in our 28-J submission, for instance, you take a look at the definition that's supplied by one of the, the RS means construction dictionary that specifically defines it to mean a public sector. That one dictionary does, but I don't think you could come up with any other definitions and all the other places where it's defined, where it's defined that way. So how would that be normally? No, but I think that you can take. Well, that that's a very, very probative definition. It's a construction dictionary. And we cited other places as well. We cited a construction dictionary in our briefs. We've also cited to Wikipedia. I understand that he's taken issue with that. The Ninth Circuit has actually accepted Wikipedia as a source, which you can actually rely on. And I don't think it actually is still there on Wikipedia, though. The problem with Wikipedia is people can change it every day. You could have changed it. Then he could change it. We could be going back and forth. I know. I understand that. But the reason why we can rely on this particular interpretation of Wikipedia is because it's consistent with other definitions as well. But going back to Judge B's statement regarding... Baya. Baya, I'm sorry. That's all right. Baya's statement. When you take a look at the ONET definition, if it does include two, you can always distinguish and say, we're only going to cover one. Council, Department of Labor is just putting forth statistics. That isn't an ONET definition for the building industry. It is. Because when you take a look at footnote six of our brief, we note that the ONET definition was amended in 1991 to merge the two different definitions that had been in existence at that time. Construction. It was a merging of the definitions of building inspector, which indicated that it was a public sector inspector and construction inspector as well. Let's step back. What is the Department of Labor's incentive for providing that definition? It's to provide the common understanding that building inspector contemplates. That isn't the Department of Labor's business. They were collecting statistics to categorize these job occupations. If that were true, Council's argument that above $50,000 or below $50,000 in earnings could have been a rational distinction. Well, it may or may not be. That's not what we're discussing in this particular case. I think, again, when you take a look at the ONET definition and its history, and I don't mean to sound evasive or repetitive, but when you take a look at it, it was not just a compilation of statistics. When you take a look at the history, as noted in footnote six of our brief. I don't think it's footnote six. Do you know what footnote it is? Footnote. I believe it was footnote six. That's what my notes reflect. I can take a look at it again to show that. It's called the Dictionary of Occupational Titles. Correct. That is the predecessor to the ONET. That's correct. And the purpose of that isn't to define occupations for purposes of union contracts. It's to collect statistics. No, but what they did was they defined what a building inspector was, Your Honor. That's the key there. They defined the building inspector back in 1991 and merged it in to the current ONET definition, and they defined building inspector as a public sector building inspector. That's why when you're in the common parlance of a construction setting, the trustees said, Oh, well, you know what? When we got this issue, we should have maybe made this clear. We're going to put this as a construction or as a public sector building inspector. Again, ONET does collect statistics, but it also sets forth definitions. And the key here, Your Honor, is not whether one definition could have been better or another one not. The question is whether or not we have a reasonable interpretation. And a reasonable interpretation of building inspector is clearly something contemplated by the ONET definition. The RS means dictionary definition. Let's suppose that you're right. Do you agree with Mr. Dean that the interpretation narrowing the scope of the term building inspector can be applied only prospectively from the time that the subcommittee adopted it? No. No, we believe that. We don't believe. I mean, here's here's here's Mr. Light has worked for 20 years. He's part of the plan. Building inspector doesn't get limited to public building inspectors before he retires. He retires in 2008. Along comes the committee and changes the cards on the table and says building inspector excludes you. Wait a minute. He's worked for 20 years. Well, that's that's an issue that we haven't addressed in this particular case. And without thinking about it a little bit more, we can certainly we can certainly address the substance of Mr. Dean's presentation. No. What he's looking at is a cutback issue. It's an amendment as to whether or not this constitutes an amendment. And we believe, though, that this is a clarification of the plan. And when the clarification occurred, it was simply to interpret an ambiguous term that was there. I mean, for instance, what it's not ambiguous if it covers two things. You can't convince me of that. Do you have a case that says that if the term covers men and women, it's ambiguous and women can be excluded? No, I don't have anything in that particular. I don't have anything in that particular instance. But what I will say, though, Judge Baya, is that that it's not necessarily the fact that Onet says that it's it covers both. What it says is that these are what it what what the term as it now stands building inspector does cover. It covers. That's not what the district court said. The district court said it covered both. Let me read to you. Because the term building inspector can refer to private building inspectors, public and building inspectors or both. Correct. Then the court finds that the defendant did not abuse his discretion. From where did you find that? I think he found that from the Onet definition that Mr. Like it's fine. But if that definition applies, it doesn't apply to Mr. Like because his claim was already accrued. Correct. His claim, I believe, was accrued at that particular time. But the thing is, I think, Your Honor, I think if you take a look at it, if if Mr. Like had actually brought his benefit without the clarification from having occurred, the subcommittee could have taken that taken a look at that de novo and said, oh, well, we're going to determine whether or not, you know, this benefit should be accepted because of our interpretation. Regarding the building inspector exception. And but what they could do is they could say, well, in in discuss or in determining and assessing the merits of this particular benefit de novo for the first time, we could say that we believe that the public's are building inspector only means public sector inspector retroactively retro. I guess it's kind of an analogous way to look at it is if you're in a common law, you're you're you're a judge deciding the common law. The common law is simply finding what the law was. And you could take a look at that retroactively and you could do it that way. Basically, what the trustees are doing is to determine what the scope of that term really is. But what about all those cases that say that you can't take away what's already been accrued as far as one of these benefits? That's what that's what you're doing. No, it's not. Because it's like the common law. Again, it's it's the it's the fact that they can determine the scope of that particular exception. And but only if it's ambiguous. Right. So your point is, if it's ambiguous, they can clarify it without it being an amendment. Right. That's correct. But also our argument is that because it has a specific understanding when you take a look at these various definitions, then what you do have is the fact that not only is this a reasonable interpretation, but in fact is a correct interpretation as well. That's the way the term is understood. If you take a look at all these. So now you're jumping. So I thought you maybe had an argument when you were saying some definitions make it only public and some make it public and private. So there's ambiguity. But now you're saying actually the right definition is that it's only public. I think that's an alternative argument we're making is that when you take a look and we did this for the purpose of, you know, putting this out because the issue of ambiguity is an important issue here. But we can also argue, as we did in our brief, that this was a correct interpretation as well. Not only is our interpretation reasonable, but it's correct. And obviously, if you have what would be the support for that, the one definition that exists compared to all the others. Well, no, there's there's the again, the Dictionary of Occupational Titles definition that's now contained in the that's part of the ONET definition. The RS means definition, the Construction Dictionary definition. But don't a lot of those wait. Sorry, I haven't memorized what each of them was, but I thought only one of them defined it as only public and the rest defined it as public or private. No, that's not correct. And so where in the record, then, are these where are these multiple definitions that say it's only public? Can you point us to that? I can grab my. I'm sorry that I didn't. That would be great. I thought there was one. So if there are more than one, it would be great to know where they are. Yes. And on page 21, we have footnotes four and five. Page 21 of your brief. That's correct. And footnotes four is a reference to the Dictionary of Construction. Footnote five is, again, the Wikipedia definition. Well, the Wikipedia definition, let's put aside. I don't think it even still says that. So what about the other? How many others? At the time, it did. But at any rate, those are just two of those dictionary definitions that define it. Wait, sorry, sorry. Let's just slow down for a second. How many definitions do you think there are? There are two. The Dictionary of Construction and Wikipedia. So if we put Wikipedia aside, we have one, right? Well, we have the RS means definition we refer to in our 28-J submission. And we have this construction dictionary definition as well. We also have the ONET prior definition from DOT defining a building inspector as someone who is only a building inspector. And we included that in our exhibits to our brief. And if you take a look, for instance, at Exhibit 3 or Exhibit 2 to our brief, it does say inspects new – it does make a reference here to the fact that it is a government service, I should say there. And government service means a public sector inspector. Not necessarily. A government employee can be paid for by a private person. And very often in these contracts, the municipality doesn't want to have a public employee who will be entitled to all the benefits, etc. So they make a condition of the contract that the contractor pays the salary. But he is a public employee for purposes of taking his direction and orders from the municipality. So they're just – what they're doing is shifting the salary burden away from the municipality to the private contractor. But the building inspector remains in the chain of command subject to the municipality. Are you telling me that that is not a building inspector? No. Irrespective of the duties performed, I think the reason why you can say that this government SIR designation here indicates that it's a public sector inspector is the fact that it refers to also a construction inspector, which is a completely private one. Again, the thing is, it's not necessarily whether or not our definition was, quote, the best one, the correct one. We go back to the issue that when you have these definitions here from O-Net, when you have them from the other cases that we have cited, that we can show that it's a reasonable interpretation. It's reasonable if you have two subsets of one, you could do that as well. You could also take a look at the fact that when he made that determination or when Mr. liked just as he – Why is it reasonable if, in case A, the building inspector is a public servant, carried on the roles of employment by the public entity, gets his money from the public entity, and in case B, he does everything the public entity tells him to do, subject to the same rules, subject to the same specifications on the contract, except the public entity has told the contractor, you've got to pay him. What's the reason for distinguishing the two? It's not a matter of control. They're both controlled by the public entity. So what's the reason for saying, if you get your money from the public sector, private sector, you ain't a building inspector. But if you get it from the public sector, you are a building inspector. What's the reason for that? Well, I'm not sure if there is any – Well, I don't think there is any reason. But I'm just saying that the fact of the matter is that if you have, for instance, let's go back to what counsel had said when he came up here. He was saying that if the committee did have the power to define this term the way it is currently defined going forward. And I think that's one of the answers that you have there. Well, that's a concession by the appellant. Yes, I think that's exactly what he said. And the thing is, the discussion there was whether or not it could be prospective or retroactive. We just discussed that issue, but that's exactly what he said. But that's because he's admitting you can amend the plan. So he's saying going forward you can amend the plan, but that's not our situation. We're trying to figure out if this can apply. That again goes to the reasonableness of that here. But it doesn't necessarily because they can amend the plan to take out the exception altogether. Everyone acknowledges that, right? It's going forward. So the fact that they can amend it to cut it in half or whatever, I mean, that's not – I know, but the thing is that goes to the power of the trustees and the plan to do so. The issue that Judge Bea was talking about was why is it reasonable? And I think that there's a number of reasons why we discussed that. But you can amend the plan without any reason at all. Right. You can. You can do that. So let me get back to the issue. In the hypothesis I gave, what's the reason for distinguishing between a check coming from ABC contractors and a check coming from L.A. County? One of the primary reasons, Judge Bea, is the fact that, again, the term does have a meaning that's contemplated by the various definitions. Again, it's something like saying – well, again, I just want to – You're repeating yourself. Well, it is, but the thing is I think it's important to note that if you also have – if you have those definitions out there, you can refer to them. Because this is basically a situation where, you know, if you said something to the effect that a chairman, for instance, does that mean that the person has to be a man? No, because it's commonly understood now, even though it's an archaic term. When I was in law school many years ago, the professor of contracts used to say to us, he who knoweth the law but knoweth not the reason, therefore, will soon forget his superfluous knowledge. What is the reason for the distinction? Is there any reason at all? Sitting right here, I think the reason is that because I was not there. I can honestly say that I cannot guess that, but I was not there. My point, again, though, is that if you still have two subsets, you can pick from one of them, and it's not unreasonable to do that. I think, again, the reasonableness issue had come up with counsel when he came up here to discuss that other issue. Again, you know, I want to also discuss the Clark case. The Clark case here is something that was- Well, pardon me. Your time is-we've taken you over five minutes. Oh, I'm sorry. You have two minutes of rebuttal. Thank you. Very quickly, the dictionary, so-called dictionary definitions, both in the footnote and the 28J, the plan disagrees with those definitions. First of all, the both definitions are identical. One copied the other, so it's multiple of two. And both say an official employed by a municipal building department. Mr. Light was employed by a county building department. Am I being picky? Sure. But it just shows the inadequacy of the definition, you know, that somebody wasn't thinking. But more important than that is that plan admits that Mr. Light was a building inspector. They admit it. We collected them on our opening brief, page 23. But the appeal denial letter called at page 124 of the excerpts of record says you're a building inspector, you're just not publicly employed. The 2008 committee meeting at which they made the distinction said, okay, we're going to make two kinds of building inspectors, the privately employed building inspectors and the publicly employed. Mr. Light is a building inspector. The 2009 summary plan description makes the same distinction. He's a building inspector, he's just not the right kind. Mr. Dean, are either public or private building inspectors subject to the union? In Los Angeles County, no. So he's not competing for union jobs in either occupation? That's correct. Of any union, not just the carpenter's union. The ONET sets out the duties and skills necessary for a building inspector. Page after page of these duties and skills rates their importance, and then, as Judge Baio says, at the bottom notes some statistical information. Mr. Light meets every one of those duties, skills, and importantly, the authority. The authority to issue violation notices. The predecessor to ONET, the Dictionary of Occupational Titles, described at footnote three on page 19 of their brief, talks about parentheses government serve. But what on page 158 of 400, I'm sorry, page 89 of 91 in the exhibits appendix to their brief, exhibit six, Dictionary of Occupational Title defines government serve as this designation includes occupations concerned with local, state, federal, and international government. It doesn't say employed by, it says concerned with, and Mr. Light was certainly concerned with. And that's all I have. Thank you very much. Thank you very much. We thank both the Council for a very interesting argument, and the case of Light v. Southwest Carpenters is marked submitted, and that concludes our calendar for today, and we stand in adjournment until tomorrow morning at 9 o'clock. Thank you.
judges: Rice, Bea, Friedland